**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,** Complainant,

v.

**Thomas J. McCANN, Respondent.**

No. 05–1643.

Supreme Court of Iowa.

March 31, 2006.

Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

Roger J. Kuhle, West Des Moines, for respondent.

WIGGINS, Justice.

The Iowa Supreme Court Attorney Disciplinary Board (Board) filed a complaint alleging Thomas J. McCann violated numerous rules of the Iowa Code of Professional Responsibility for Lawyers in handling six different legal matters. The Grievance Commission (Commission) found the Board had proved the allegations of the complaint and recommended we suspend McCann's license to practice law indefinitely with no possibility of reinstatement of his license for a period of at least two years. We agree with the Commission that McCann's conduct violated numerous rules of the Iowa Code of Professional Responsibility for Lawyers and suspend McCann's license to practice law in this state indefinitely with no possibility of reinstatement for two years.

## I. Proceedings Before the Grievance Commission.

The Board filed a complaint against McCann consisting of six counts alleging numerous violations of the Iowa Code of Professional Responsibility for Lawyers. McCann filed an answer admitting and denying various paragraphs of the complaint. Prior to the hearing, the Board and McCann entered into a stipulation admitting all the factual allegations of the complaint and agreeing to the admission of certain exhibits supporting the allegations. The stipulation also included documents detailing McCann's major depressive disorder and a joint recommendation that McCann's conduct warranted an indefinite suspension of his license to practice law with no possible reinstatement for at least two years. Finally, the stipulation waived a hearing on the complaint. Based on the

stipulation, the Commission cancelled the evidentiary hearing and only heard the arguments of the parties.

The Commission filed a report in our court concluding the Board had proved all the factual allegations of the complaint by a convincing preponderance of the evidence and McCann's conduct amounted to multiple violations of the Iowa Code of Professional Responsibility for Lawyers. The Commission recommended that we suspend McCann's license to practice law indefinitely with no possibility of reinstatement for a period of at least two years. As conditions of McCann's reinstatement, the Commission recommended McCann make restitution to all persons and entities that have lost money as a result of his actions, McCann provide our court with an evaluation completed by a licensed psychiatrist verifying McCann's fitness to practice law, and McCann agree to refrain from practicing law as a sole practitioner for a period of at least two years after his reinstatement.

## II. Scope of Review.

We review the record made before the Commission de novo. *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 396 (Iowa 2005). The Board has the obligation to prove an ethical violation by a convincing preponderance of the evidence. *Id.* Although we consider the factual findings and discipline recommendations made by the Commission in deciding the matter, they do not bind us. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 815 (Iowa 2004).

## III. Factual Findings.

Using the stipulation of the parties together with our review of the record, we make the following findings of fact.

**Armstrong Matter.** McCann undertook representation of Jerry and Karen Armstrong in an action to enforce grandparent visitation rights. McCann filed an intervenors' application for rule to show cause and request for declaratory ruling. At the hearing on the application, the court noted the difficulty in proving the grandchild's mother was in contempt and suggested the grandparents' time might be better spent if they focused on requesting a specific visitation schedule. McCann did not proceed with the contempt hearing.

McCann never filed an application requesting a specific visitation schedule, although he did give a copy of an intervenors' application for further order concerning visitation to the Armstrongs indicating to them he filed it with the court. The Armstrongs attempted to contact McCann from November 2000 to February 2001 to determine the status of their case. McCann did not respond to the Armstrongs' inquiries. On February 21, 2001, the Armstrongs notified McCann that he was no longer their attorney. The Armstrongs filed a complaint with the Board in March. Two days after the Armstrongs filed the complaint, the Board notified McCann of the complaint. McCann then filed the intervenors' application for further order concerning visitation.

**Nelson Matter.** McCann agreed to represent Jennifer Nelson in an action for dissolution of marriage. McCann filed a petition for dissolution of marriage stating Nelson had been a resident of Iowa for the past year. At the time McCann filed the dissolution petition, he knew that allegation was not true. McCann attached a verification page signed by Nelson to the dissolution petition. McCann had Nelson sign the verification page before he drafted the petition. Nelson never reviewed the petition before McCann filed it.

Five months after filing the dissolution petition, McCann filed an application for temporary custody. The application for temporary custody also contained a signed verification page prepared and notarized by McCann. Again, Nelson did not review the application before signing the verification page, as McCann had not prepared the application at the time McCann presented the verification page to Nelson for her signature.

McCann never served the dissolution petition on the respondent. The district court issued an order stating that unless McCann served the opposing party with an original notice within sixty days of its order, the court would dismiss the case. McCann did not notify Nelson of this order. Instead, McCann filed a request to serve the notice by publication stating service had been attempted on the respondent but his whereabouts were unknown. This statement was false because McCann never attempted to serve the original notice on the respondent. When McCann made the representation of service to the court, he knew it was false.

**Soloman Matter.** McCann undertook representation of Debra Soloman in an action for dissolution of marriage. Soloman paid McCann a $750 retainer. McCann filed a petition for dissolution but neglected to pursue the dissolution matter to decree. In July 2001, McCann received a notice pursuant to Iowa Rule of Civil Procedure 1.944 informing him that the case was subject to dismissal on January 1, 2002.

In October 2001, Soloman filed a small claims action against McCann to recover her retainer. McCann and Soloman appeared on the scheduled trial date for the small claims case in December 2001. The court continued the trial of the small claims action to February 28, 2002.

Around this time, Soloman filed a complaint against McCann with the Polk County Ethics Committee. The ethics committee dismissed the complaint based on McCann's response that he hoped to have the matter resolved by the end of the year, but if he did not, he would seek a trial date to avoid dismissal under rule 1.944.

On January 1, 2002, the clerk of court dismissed the dissolution action under rule 1.944. On January 24, McCann requested that the dissolution matter be set for trial on February 28. On February 28, McCann and Soloman appeared for the small claims case. Soloman dismissed the small claims matter because McCann indicated he would complete her dissolution matter. However, the dissolution matter did not proceed to trial on this date.

After that date, Soloman attempted to call McCann and was unable to contact him. Soloman learned McCann moved from his office without informing Soloman of the move. In December 2002, Soloman sent a letter to the Polk County Court inquiring how to settle her divorce case. The court informed her that the clerk dismissed her case in January 2002 and McCann did not reinstate it. McCann failed to inform Soloman the clerk dismissed her case in January 2002 and that he did not have it reinstated.

**Barritt–Jarosch Matter.** In October 2002, McCann undertook the representation of Barbara Barritt–Jarosch and Jeff Jarosch in an action for custody of Jarosch's son who is also Barritt–Jarosch's grandson. They paid McCann a $2500 retainer. Instead of depositing the retainer in an IOLTA trust account, McCann deposited the retainer in his business checking account. McCann used the retainer for his personal or business use.

McCann never pursued the custody case. In February 2003, Barritt–Jarosch

notified McCann that she was firing him and requesting an accounting. She also requested that he return all monies not used by him to pursue her case. McCann did not respond to these requests. Barritt–Jarosch also filed a complaint with the Board. McCann responded to the Board's complaint. The Board then made two requests of McCann asking him to provide a copy of any signed fee agreement or engagement letter and an itemization of his services, as well as an itemization and refund of the unearned portion of the retainer to Barritt–Jarosch. McCann did not respond to the Board's requests.

In November 2003, Barritt–Jarosch filed a small claims action against McCann in an attempt to recover her retainer. McCann appeared at the hearing in the case and returned the retainer in full to Barritt–Jarosch.

**Moore Matter.** McCann agreed to represent Larry Moore in an action for dissolution of marriage. Moore paid McCann a $750 retainer. Moore met with McCann twice, but McCann never filed the dissolution action. After a few months, Moore requested McCann pursue the matter or return his retainer. McCann failed to reply to Moore's request.

Moore filed a complaint with the Board. The Board notified McCann of the complaint by restricted certified mail on two occasions and by ordinary mail on one occasion. McCann never responded to the complaint. Moore then hired another attorney to pursue his dissolution. Moore's new attorney wrote several letters to McCann requesting McCann return Moore's retainer. McCann never replied to the new attorney's requests.

**Purscell Matter.** In May 2003, McCann agreed to represent Benjamin Purscell in an action for dissolution of marriage. McCann received a $750 retainer from Purscell. McCann deposited the retainer in his business checking account rather than depositing it in an IOLTA trust account. McCann used the retainer for his personal or business use. McCann caused Purscell to believe that he would file the dissolution petition on May 26, 2003, and the matter would be final ninety days after he filed the petition.

In September, Purscell contacted McCann. McCann informed Purscell that he was still in the waiting period. In November, Purscell discovered McCann did not file the dissolution petition. Purscell attempted to reach McCann to obtain a refund but was unable to make contact with him.

In December, McCann filed Purscell's dissolution petition but did not inform Purscell he filed it. McCann presented a $100 check to the Polk County Clerk of Court for the filing fee. The check was returned due to insufficient funds and a $30 service charge was added to Purscell's court costs. McCann never paid the filing fee or the service charge. McCann did not pursue the matter after he filed the petition.

Purscell filed a complaint with the Board. The Board notified McCann of the complaint. McCann did not reply to the Board. The Board sent a second letter to McCann. McCann replied to the Board's second letter two months later indicating he was refunding Purscell's retainer less the $100 filing fee. McCann never refunded any money to Purscell.

## IV. Ethical Violations.

 Professional neglect "'involve[s] indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client.'" *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy,* 684 N.W.2d 256, 259–

60 (Iowa 2004) (citation omitted). Generally, professional neglect consists of more than a single act or omission and it may involve procrastination. *Id.* at 260. In every matter alleged by the Board in the complaint, McCann failed to pursue his clients' causes of action. These failures violated DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law), DR 6–101(A)(3) (providing a lawyer shall not neglect a client's legal matter), and DR 7–101(A)(1) (providing a lawyer shall not intentionally fail to seek the lawful objectives of a client).

 A lawyer violates our disciplinary rules when the lawyer lies to cover up misconduct. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth,* 656 N.W.2d 93, 99 (Iowa 2002) (finding a violation of the disciplinary rules when a lawyer lied to the beneficiaries and the court to cover up the lawyer's misconduct). In each of the matters alleged by the Board in the complaint, McCann misrepresented to the clients how he was processing the cases to cover up his neglect. In the Soloman matter, McCann also misrepresented the status of the case to the Polk County Ethics Committee to cover up his misconduct when he stated how he would respond to the rule 1.944 notice. In the Nelson matter, McCann also misrepresented to the court his efforts to serve the respondent to cover up his neglect. These misrepresentations violated DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 1–102(A)(4) (providing a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law).

In the Armstrong matter, the clients discharged McCann as their attorney after he appeared on their behalf. McCann failed to withdraw as counsel. A lawyer is required to withdraw from a client's case after being discharged by the client. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman,* 674 N.W.2d 129, 138 (Iowa 2004). McCann's failure to withdraw violated DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule) and DR 2–110(B)(4) (providing a lawyer shall withdraw if the lawyer is discharged by the client).

 A lawyer is required to place a retainer in a trust account, account for the funds, and properly deliver a client's funds to the client when requested to do so. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Frerichs,* 671 N.W.2d 470, 477 (Iowa 2003). McCann failed to comply with these ethical obligations in the Barritt–Jarosch, Moore, and Purscell matters. McCann's failures violated DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 9–102(B)(3) (providing a lawyer shall maintain complete records of a client's funds and render appropriate accounts to the client regarding them), and DR 9–102(B)(4) (providing a lawyer shall promptly pay or deliver funds to a client as requested by a client). Additionally, in the Barritt–Jarosch and Purscell matters, McCann violated DR 9–102(A) (providing funds of a client shall be deposited in one or more identifiable interest-bearing trust accounts) and DR 9–103(A) (providing a lawyer shall maintain on a current basis books and records sufficient to demonstrate compliance with DR 9–102).

McCann stipulated that he used the retainers in the Barritt–Jarosch and Purscell matters for his personal or business use prior to earning them. A lawyer converts a client's funds when the lawyer takes a fee before he earns it. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland,* 577 N.W.2d 50, 56 (Iowa 1998). This conduct violated DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 1–102(A)(3) (providing a lawyer shall not engage in illegal conduct involving moral turpitude), DR 1–102(A)(4) (providing a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law), DR 9–102(A) (providing funds of a client shall be deposited in one or more identifiable interest-bearing trust accounts), and DR 9–103(A) (providing a lawyer shall maintain on a current basis books and records sufficient to demonstrate compliance with DR 9–102).

Finally, in the Barritt–Jarosch and Moore matters, McCann failed to respond to the Board's inquiries. We expect lawyers to cooperate with disciplinary investigations conducted by the Board. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins,* 556 N.W.2d 456, 457 (Iowa 1996). McCann's failure to respond violated DR 1–102(A)(1) (providing a lawyer shall not violate a disciplinary rule), DR 1–102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and DR 1–102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law).

## V. Discipline.

In summary, McCann's conduct consists of multiple acts of neglecting clients' matters, misrepresenting how he was processing the matters to his clients, misrepresenting a matter to the court, misrepresenting a matter to the Polk County Ethics Committee, failing to withdraw from a matter when discharged, failing to deposit retainers in a trust account, failing to maintain proper books and records regarding a trust account, failing to deliver client funds when requested to do so, using funds that belong in a trust account for personal or business use, and failing to respond to the Board's inquiries.

We have stated:

The goal of the Code of Professional Responsibility is "to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering." When deciding on an appropriate sanction for an attorney's misconduct, we consider "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public." We also consider aggravating and mitigating circumstances present in the disciplinary action.

*Honken,* 688 N.W.2d at 820 (alteration in original) (citations omitted). Precedents in attorney discipline cases are of little value, and we must impose discipline in light of the facts and circumstances of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard,* 653 N.W.2d 373, 376 (Iowa 2002).

A mitigating factor in McCann's favor is that his stressful family law practice caused him to suffer from severe depression and anxiety. *Moonen,* 706 N.W.2d at 401–02. We can consider McCann's depression when determining a sanction; however, a lawyer's mental status is "a personal problem of the lawyer that does not excuse the misconduct." *Honken,* 688 N.W.2d at 821–22.

Aggravating factors in this record include multiple incidents of neglect. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 553 (Iowa 2004). McCann's misrepresentations to the court, his clients, and the Polk County Ethics Committee are serious violations. *Bernard*, 653 N.W.2d at 376. Additionally, McCann's actions in requesting retainers, not pursuing the cases, and failing to return the fees when clients requested that he do so caused substantial harm to his clients. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jay*, 606 N.W.2d 1, 4 (Iowa 2000).

McCann's conversion of his clients' funds causes us the most concern. This case is not a case of mere commingling of client funds with business funds. McCann stipulated that he "converted" a total of $3250 in retainers from Barritt–Jarosch and Purscell for his personal or business use. Normally when a lawyer deliberately converts a client's funds, we revoke the lawyer's license to practice law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams*, 675 N.W.2d 530, 533 (Iowa 2004); *Comm. on Prof'l Ethics & Conduct v. Ottesen*, 525 N.W.2d 865, 866 (Iowa 1994). We have stated, however, that we will impose a lesser penalty when "the attorney had a colorable future claim to the funds." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson*, 687 N.W.2d 587, 590 (Iowa 2004). The stipulated facts indicate McCann had a colorable future claim to the funds he converted. Therefore, revocation of McCann's license to practice law is not warranted in this case. *See Kennedy*, 684 N.W.2d at 260–61 (imposing a two-month suspension where the conduct involved converting retainers before completing the work); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Waples*, 677 N.W.2d 740, 742–43 (Iowa 2004) (imposing a six-month suspension where the conduct involved collecting fees without completing the work); *Ruth*, 656 N.W.2d at 98–100 (imposing a two-year suspension where the conduct involved taking fees before earning them); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 589 N.W.2d 746, 747–49 (Iowa 1999) (imposing a two-month suspension where the conduct involved depositing a fee in the lawyer's personal account and failing to perform the work). In light of the facts and circumstances of this case, we suspend McCann's license to practice law for two years.

## VI. Disposition.

We suspend McCann's license to practice law in this state indefinitely with no possibility of reinstatement for two years. The suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12. Upon any application for reinstatement, McCann must establish that he has not practiced law during the suspension period, he has in all ways complied with the requirements of Iowa Court Rule 35.13, and he has made restitution to all persons and entities that have lost money as a result of his actions as set forth in this opinion. McCann must also provide this court with an evaluation by a licensed health care professional verifying his fitness to practice law. Before obtaining this evaluation, McCann shall submit the names of the proposed evaluators and the nature of the evaluation to the Board for its prior approval. McCann shall also comply with the notification requirements of Iowa Court Rule 35.21. We tax the costs of this action to McCann pursuant to Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**