# IN THE SUPREME COURT OF IOWA

No. 10–1081

Filed May 13, 2011

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JOHN EDWARD NETTI, JR.,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent has committed multiple ethical infractions and recommends a two-year suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

John E. Netti, Jr., Dubuque, pro se.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, John Edward Netti, Jr., alleging multiple violations of the Iowa Rules of Professional Conduct as well as the Iowa Court Rules, the Iowa Rules of Probate Procedure, and the Iowa Code. A division of the Grievance Commission of the Supreme Court of Iowa found the respondent's conduct violated the rules and recommended we suspend his license to practice law with no possibility of reinstatement for a period of two years. Neither party appealed. Therefore, we are required to review the report of the grievance commission de novo. Iowa Ct. R. 35.10(1). On our de novo review, we find respondent has violated numerous provisions of our rules and Code, which require us to impose sanctions. Accordingly, we suspend respondent's license to practice law indefinitely with no possibility of reinstatement for a period of two years from the date of filing this decision.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele*, 795 N.W.2d 507, 509 (Iowa 2011). The board must prove an attorney's ethical misconduct by a convincing preponderance of the evidence. *Id.* A convincing preponderance of the evidence is more than the preponderance standard required in a typical civil case, but less than proof beyond a reasonable doubt. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 33 (Iowa 2011). Although the commission's findings and recommendations are not binding on us, we give them respectful consideration. *Id.* at 33. "Upon proof of misconduct, we may impose a greater or lesser sanction than the sanction recommended by the

commission." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 764 (Iowa 2010).

## II. Findings of Fact.

In 1994 respondent, John Edward Netti, Jr., received his license to practice law in the State of Kentucky. Sometime in 2002 or 2003, he received a private reprimand with regard to a client-related matter in Kentucky. In 2001 Netti obtained his license to practice law in Iowa. For some period, his Iowa license to practice law was on inactive status. In 2006 his license was placed on active status. On October 17, 2008, we issued an order suspending his license for failure to pay annual fees and/or file the reports as required by our rules. His license remains under suspension to this day.

The board's complaint alleges Netti engaged in multiple violations of the Iowa Rules of Professional Conduct, the Iowa Court Rules, the Iowa Rules of Probate Procedure, and the Iowa Code relating to his representation of four separate clients. The alleged misconduct primarily concerns trust account violations, misconduct surrounding fee agreements, the taking of fees, failure to satisfy a hospital lien with settlement proceeds, conflict of interest, the unauthorized practice of law, as well as dishonesty, incompetence, and neglect. Netti filed an answer, denying the board's allegations.

Netti, however, failed to answer the board's interrogatories, requests for production of documents, and requests for admission. As a result, the commission deemed the board's requests for admission admitted. *See, e.g.,* Iowa Ct. R. 35.6; Iowa R. Civ. P. 1.517(2)(*b*); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 396 (Iowa 2005) (recognizing failure to respond to board's discovery requests requires court to consider all the matters stated in the requests as

admitted). In addition, the commission sanctioned Netti for his failure to respond to the board's discovery requests by treating all the factual allegations in the complaint as admitted for purposes of the disciplinary proceeding. *See, e.g., Moonen,* 706 N.W.2d at 396 (recognizing this sanction is consistent with the sanctions allowed under Iowa Rule of Civil Procedure 1.517(2)(*b*)(1)). Based on our de novo review of the record, we make the following findings of fact.

**A. Sharon Matz Representation (Count I).** In July 2005, Sharon Matz retained Netti to represent her in a home construction dispute. Between July and October 2005, Matz gave Netti three checks of $250, $1160 or $1150, and $1500 as payment for his anticipated services. At the times he received the checks, Netti had not yet earned these sums. Netti failed to deposit the checks into a separate client trust account. He also failed to provide Matz with statements or accountings of the services he rendered and the fees and expenses he charged, although she requested such statements and accountings. As a result, in 2007 Matz terminated Netti's representation and filed a complaint with the board.

As part of its investigation, the board requested that Netti provide it with copies of his trust account records showing the handling of Matz's advance fee and expense payments and copies of the statements or correspondence he sent to Matz, notifying her of his withdrawal of funds from the trust account to apply toward the fees and expenses associated with his representation. In response, Netti provided the board with a time and billing statement for his representation of Matz. He also stated, "I am still working on the trust account records and should have them to you within the next 10 days." However, Netti never provided copies of his trust account records to the board.

**B. Estate of Jeremy Zimmerman (Count II).** In 2006 and 2007, Netti represented the Estate of Jeremy Zimmerman. The primary asset of the estate was a wrongful death claim. Netti agreed to pursue this claim and entered into a written contingent-fee agreement with Mary Nauret, the decedent's mother and administrator of the estate. The contingent-fee agreement failed to state whether Netti's litigation expenses were to be deducted before or after the contingent fee is calculated.

In November 2006, Netti settled the wrongful death claim for $132,750 and deposited the settlement amount into his "escrow" account, rather than a proper client trust account. A few days later, Netti took $44,245 from the settlement amount as his fee and transferred this amount to a different account. At the time he collected his fee, Netti had not filed the affidavit required by Iowa Code section 633.202 (2005), and the probate court had not issued an order allowing Netti to collect any compensation for his services.

In addition to the wrongful death action, Netti also agreed to assist Nauret in administering the estate and was designated as counsel for the estate. His purpose in opening the estate was solely to pursue the wrongful death claim. After a notice of delinquency, Netti filed an inventory asserting the estate had no assets. This inventory misrepresented the assets of the estate because Netti did not list any of the wrongful death settlement proceeds as an asset. Netti also applied to close the estate. After learning of his incompetence and neglect in probating the estate, Nauret, as administrator of the estate, applied to remove Netti as designated attorney. In seeking Netti's removal, Nauret cited Netti's mishandling of the wrongful death settlement proceeds, his improper collection of fees, incorrect inventory, failure to pay claims

against the estate, and failure to distribute funds to the decedent's legal heir, as well as other problems. The court removed Netti as the attorney for the estate. Netti returned $20,000 of the $44,245 in fees he collected, and the court entered judgment against him for the remaining $24,245 he had taken. Netti has not yet fully satisfied this judgment. Finally, after the court terminated his representation, Netti failed to promptly deliver the estate's file to his successor counsel.

**C. Joshua Walker Representation (Count III).** On January 1, 2005, Joshua Walker was injured in an automobile accident. From August 9, 2005 through January 18, 2006, Walker received medical care and treatment from Finley Hospital for the injuries he sustained during the accident. In 2006 and 2007, Netti represented Walker with regard to a personal-injury lawsuit stemming from the automobile accident. Netti agreed to represent Walker on a contingent-fee basis but the two never executed a written agreement. Finley Hospital asserted a $13,000 hospital lien on the proceeds of the personal-injury claim against the tortfeasor's insurer, Metropolitan Property and Casualty Insurance Company. Netti was aware of the hospital lien.

Netti settled Walker's personal-injury claim with the tortfeasor and Metropolitan for $45,000. Metropolitan issued a settlement check for $45,000, payable to Netti and Walker. Netti deposited the settlement proceeds into his "escrow" account rather than a proper client trust account. Subsequently, Netti took $23,296.02 as his fee and transferred this amount to a different account. He then gave Walker a check for $20,278.98. The settlement agreement and release obligated Walker to pay from the settlement proceeds "all outstanding liens or claims for reimbursement of medical subrogation claims." Netti, however, failed to take the appropriate steps to satisfy Finley Hospital's hospital lien from

the settlement proceeds. He also failed to provide Walker with an accounting for the settlement proceeds.

Finley Hospital sued Metropolitan to satisfy its hospital lien. Subsequently, Metropolitan filed a third-party petition against Netti and Walker for indemnity. Without authority, Netti filed an answer for himself and Walker. This prompted a letter from Metropolitan's lawyer, warning Netti of the conflict of interest and stating, "[I]t's my belief that you cannot ethically represent both yourself and Joshua Walker in this lawsuit." In response, while still purporting to represent Walker, Netti moved to withdraw the previously filed answer, filed a new answer for himself, and filed a cross-claim against Walker for indemnity. The cross-claim alleged it was Walker's obligation to satisfy Finley Hospital's lien. Netti apparently viewed his attempted withdrawal of the answer as a withdrawal from his representation of Walker.

The district court granted summary judgment in favor of Finley Hospital as to its hospital-lien claim against Metropolitan. The court also granted summary judgment in favor of Metropolitan as to its third-party indemnification claim against Walker. The court rejected Metropolitan's third-party indemnification claim against Netti because he was not a party to the settlement agreement. After the court's order, Netti filed a motion for protective order asserting that, in seeking his deposition, Metropolitan was harassing him and fishing for undiscoverable information. The assertions in Netti's motion were false.

**D. Angela Mangeno Representation (Count IV).** In 2008 Netti was suspended from the practice of law in Iowa for failing to submit his annual client security report. Nevertheless, believing Netti was a lawyer in good standing, Angela Mangeno retained him to represent her in a sales tax dispute with the Iowa Department of Revenue.

Possibly believing he could represent Mangeno as a non-lawyer, Netti convinced Mangeno to execute a power of attorney in his favor. In addition, Mangeno gave Netti a $750 retainer as payment for his anticipated services. Netti failed to deposit the $750 into a separate client trust account. He also failed to regularly communicate with Mangeno or do the work she hired him to do. As a result, Mangeno terminated Netti's representation and requested a refund of her retainer and the return of her records. Netti failed to promptly return Mangeno's records and has not refunded her $750 retainer. Mangeno filed a complaint with the board. Netti refused to send a copy of his file to the board and asserted that the board "has no jurisdiction over this matter."

### III. Violations.[1]

**A. Rule 32:1.1.** Rule 32:1.1 provides, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Iowa R. Prof'l Conduct 32:1.1. " 'Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 668 (Iowa 2007) (quoting Iowa R. Prof'l Conduct 32:1.1 cmt. 5).

In the Zimmerman matter, Netti's failure to administer the estate properly constituted incompetent representation. In the Walker matter,

---

[1]In some of the complaint's counts, the board alleged a violation of rule 32:8.4(a) ("It is professional misconduct for a lawyer to . . . violate . . . the Iowa Rules of Professional Conduct . . . ."). We have previously held that we do not consider a violation of this rule as a separate ethical infraction, and so, we will give it no further consideration. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton,* 784 N.W.2d 761, 769 (Iowa 2010).

his handling of the hospital lien also amounted to incompetent representation. Finally, his failure to perform any services in the Mangeno matter was incompetent representation. Accordingly, the board has proved Netti violated rule 32:1.1.

**B. Rule 32:1.3.** Rule 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. This rule requires an attorney to handle a client's matter in a "reasonably timely manner." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson,* 792 N.W.2d 674, 678 (Iowa 2010). Netti failed to handle the estate proceedings in the Zimmerman matter and the tax issues in the Mangeno matter in a reasonably timely manner. Thus, we find the board proved Netti violated rule 32:1.3.

**C. Rules 32:1.4(a)(3) and (4).** Under our rules of professional conduct:

> (a) A lawyer shall:
>
> . . . .
>
> (3) keep the client reasonably informed about the status of the matter;
>
> (4) promptly comply with reasonable requests for information[.]

Iowa R. Prof'l Conduct 32:1.4(a)(3), (4). This rule requires an attorney to stay in communication with his or her client so that the attorney can inform the client of the status of the matter and promptly respond to reasonable requests of the client. *Id.* In the Mangeno matter, Netti did not keep his client informed or respond to her reasonable requests. Accordingly, Netti violated rule 32:1.4.

**D. Rule 32:1.5(c).** Our rules of professional conduct allow attorneys to enter into contingent-fee agreements under certain

circumstances. *Id.* r. 32:1.5. If an attorney agrees to perform his or her services under a contingent-fee agreement, the fee agreement must be in writing and contain certain provisions to comply with our rules. *Id.* r. 32:1.5(c). Our rules provide:

> (c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

*Id.*

Netti violated this rule in the Zimmerman matter because the contingent fee agreement failed to state whether Netti would deduct the litigation expenses before or after the contingent fee is calculated. In the Walker matter, Netti failed to execute a written contingent fee agreement with Walker. For these reasons, Netti violated rule 32:1.5(c).

**E. Rule 32:1.7(a).** Rule 32:1.7(a)(2) requires:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> . . . .
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's

responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

*Id.* r. 32:1.7(a)(2).

This rule applies to concurrent conflicts of interest with current clients. *Id.* r. 32:1.7 cmt. 1. The first question then becomes, was Walker Netti's client at the time the hospital filed the lawsuit to satisfy its hospital lien?

Consistent with section 14 of the Restatement (Third) of the Law Governing Lawyers, we have formulated a three-part test to determine the existence of an attorney-client relationship. *State v. Parker*, 747 N.W.2d 196, 203–04 (Iowa 2008). An attorney-client relationship exists when:

> (1) a person sought advice or assistance from an attorney, (2) the advice or assistance sought pertained to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agreed to give or actually gave the desired advice or assistance.

*Comm. on Prof'l Ethics & Conduct v. Wunschel*, 461 N.W.2d 840, 845 (Iowa 1990). We also have a rule that presumes "an attorney-client relationship exists between the attorney and the person on whose behalf the attorney enters the appearance." *Brandon v. W. Bend Mut. Ins. Co.*, 681 N.W.2d 633, 640 (Iowa 2004). Evidence that the client did not assent to the filing of an appearance may rebut the presumption of an attorney-client relationship. *Id.*

In determining when the attorney-client relationship ends, we have said, "The point at which the attorney-client relationship . . . ends is further defined by the rule that a lawyer bears responsibility for only those legal matters he or she is engaged to discharge." *Wunschel*, 461 N.W.2d at 845. Our formulation of when the attorney-client relationship ends is consistent with the Restatement (Third) of the Law Governing

Lawyers. The Restatement states, "Subject to Subsection (1) and § 33, a lawyer's actual authority to represent a client ends when . . . the representation ends as provided by contract or because the lawyer has completed the contemplated services." Restatement (Third) of the Law Governing Lawyers § 31(2)(e), at 220 (2000). Moreover, section 33(2)(b) provides,

> (2) Following termination of a representation, a lawyer must:
>
> . . . .
>
> (b) take no action on behalf of a former client without new authorization and give reasonable notice, to those who might otherwise be misled, that the lawyer lacks authority to act for the client.

*Id.* § 33(2)(b), at 240. The determination as to when an attorney-client relationship begins or ends is a question of fact. *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 57 (Iowa 1977).

Applying these principles, the board has established an attorney-client relationship existed during the prosecution and settlement of the personal-injury suit. Although Netti and Walker did not enter into a written contingent-fee agreement setting forth the scope of employment, we believe Netti completed his service to Walker for the personal-injury claim when he disbursed the settlement funds. However, the existence of an attorney-client relationship for the personal-injury case does not necessarily mean Netti and Walker had an attorney-client relationship during the hospital's action to satisfy its hospital lien.

When Netti filed an appearance on behalf of Walker in the hospital-lien action, a presumption exists that Netti and Walker had an attorney-client relationship. However, the undisputed evidence establishes Netti filed the answer on Walker's behalf without Walker's authority to do so.

Thus, the presumption is rebutted. Accordingly, Netti and Walker did not have an attorney client relationship at the time Netti filed the appearance in the hospital lien action. Nevertheless, Walker was Netti's former client at that point in time.

At the time Netti filed the answer, Netti was representing his personal interest. Netti's interests conflicted with Walker's interests, as evidenced by the claim for indemnity Netti filed against Walker, when Netti attempted to withdraw as Walker's attorney. This conflict violates rule 32:1.7(a)(2).

**F. Rule 32:1.9(c).** Rule 32:1.9(c) states:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known; or

> (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Iowa R. Prof'l Conduct 32:1.9(c). By its terms, this rule applies to former clients. We have found that, at the time Netti filed the answer in the hospital-lien case, Walker was a former client.

The record does not reveal Netti used or revealed any information he may have obtained during his representation of Walker at the time he filed the answer on behalf of Walker. Netti did reveal confidential conversations between Walker and him concerning who would pay the hospital lien in Netti's cross-claim against Walker for indemnity. In the cross-claim, Netti alleged that he and Walker discussed the lien and Walker agreed he should pay it.

Rule 32:1.6 allows an attorney to reveal confidential information under certain circumstances. The relevant part of the rule provides:

> (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b) or required by paragraph (c).
>
> (b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:
>
> . . . .
>
> (5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client[.]

*Id.* r. 32:1.6(a), (b)(5). Comment 10 further elaborates on an attorney's right to disclose information. It states:

> [10] Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. Such a charge can arise in a civil, criminal, disciplinary, or other proceeding and can be based on a wrong allegedly committed by the lawyer against the client or on a wrong alleged by a third person, for example, a person claiming to have been defrauded by the lawyer and client acting together. The lawyer's right to respond arises when an assertion of such complicity has been made. Paragraph (b)(5) does not require the lawyer to await the commencement of an action or proceeding that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion. The right to defend also applies, of course, where a proceeding has been commenced.

*Id.* r. 32:1.6 cmt. 10.

Assuming Netti had the right to disclose this information in order to protect himself from a judgment sought by the insurance company, the information revealed by Netti in the cross-claim may have been allowed under rule 32:1.6(b)(5). However, an attorney can only disclose such information to the extent the attorney reasonably believes it necessary to protect him from a claim. *Id.* r. 32:1.6(b). Thus, an attorney does not have an unlimited right of disclosure. Comment 14 discusses the factors an attorney should consider before making such a disclosure. The comment contains the following statement:

> [14] Paragraph (b) permits disclosure only to the extent the lawyer reasonably believes the disclosure is necessary to accomplish one of the purposes specified. Where practicable, the lawyer should first seek to persuade the client to take suitable action to obviate the need for disclosure. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to accomplish the purpose. If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.

*Id.* r. 32:1.6 cmt. 14.

The board has not produced any evidence regarding any conversations between Netti and Walker before Netti disclosed the information in his cross-claim. It did not offer any evidence under what circumstances Netti made the disclosures. Although the board relied on Netti's failure to answer its discovery requests as admissions, it still could have put Netti on the stand to establish whether the disclosures he made were not reasonably necessary to establish a defense to the hospital's claim. Without such evidence, we are unable to determine if

Netti violated rule 32:1.9(c). Accordingly, the board has failed to prove Netti violated rule 32:1.9(c).

**G. Rule 32:1.15 and Iowa Court Rules 45.1, 45.2(2), 45.3, 45.4, and 45.7.** We deal with these alleged rule violations together because they all apply to the handling of clients' funds.

Rule 32:1.15 governs the safeguarding of a client's property. It reads in relevant part:

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.
>
> . . . .
>
> (c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.
>
> (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
>
> . . . .
>
> (f) All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules.

*Id.* r. 32:1.15. Iowa Court Rules 45.1, 45.2(2), 45.3, 45.4, and 45.7 set forth the details a lawyer needs to know in administering his or her trust accounts. These rules require a lawyer to place client funds, including a

retainer, in a trust account, account for those funds, and when requested to do so, properly deliver a client's funds to the client. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 95 (Iowa 2006).

By not having a trust account, Netti violated rules 32:1.15, 45.1, 45.2(2), 45.3, 45.4, and 45.7. He violated rule 32:1.15, which incorporates chapter 45 of the Iowa Court Rules, by failing to deposit Matz's retainer in a trust account, taking fees in the Matz matter before he earned the fees, and failing to give Matz contemporaneous notice of his withdrawals.

Iowa Code sections 633.198 and 633.199 set forth the amount of fees an attorney can be paid for representing an estate. Section 633.202 and Iowa Court Rule 7.2 establish when an attorney can take his or her fee. Netti failed to comply with any of these Code provisions or rule 7.2 when he took his fee in the Zimmerman matter. Accordingly, he violated rule 35:1.15 by taking his fee without court approval and failing to deposit the proceeds of the wrongful death settlement in a trust account.

In the Walker matter, he also violated rule 32:1.15 by failing to deposit the settlement in a trust account. Finally, he violated rule 32:1.15 in the Mangeno matter by failing to deposit the retainer in the trust account, taking a fee before the work was completed, and his failure to account for the retainer when asked to do so.

In short, Netti's handling of his clients' property is a textbook example of how not to operate a law office. The proper way to operate a law firm is to comply with rule 32:1.15 and chapter 45 of our court rules. These rules require an attorney not to comingle a client's funds with the attorney's funds. Iowa R. Prof'l Conduct 32:1.15(a); Iowa Ct. R. 45.1. Moreover, an attorney should never withdraw any funds from a trust

account until the attorney earns the fee or uses the funds for an actual expense. Iowa R. Prof'l Conduct 32:1.15(c); Iowa Ct. R. 45.7(3). When an attorney withdraws funds from an account, the attorney should give contemporaneous notice to the client. Iowa Ct. R. 45.7(4). Lastly, when requested, the attorney should give his or her client an accounting of the property the attorney is holding for the client. Iowa R. Prof'l Conduct 32:1.15(d); Iowa Ct. R. 45.2(2).

**H. Rule 32:1.16(d).** Rule 32:1.16(d) provides:

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by law.

Iowa R. Prof'l Conduct 32:1.16(d).

In the Zimmerman matter and the Mangeno matter, the admission contained in the record is that Netti failed to promptly deliver the file to successor counsel or to the client. Our rule requires a lawyer to "take steps to the extent reasonably practicable to protect a client's interests," including surrendering papers and property of the client. *Id.* The admission of "promptly deliver" is not the same as "reasonably practicable." "Promptly" means immediately or quickly. *Webster's Third New International Dictionary* 1816 (unabr. ed. 2002). The "reasonably practicable" standard in rule 32:1.16(d) injects the standard of reasonableness when determining if an attorney took the proper steps to protect the client's interest. In other words, "promptly" and "reasonably practicable" are not synonymous. Without any further evidence of the circumstances surrounding Netti's delivery of the file to successor

counsel, we are unable to determine whether Netti's conduct in the Zimmerman matter or the Mangeno matter violates rule 32:1.16(d). Thus, the board has failed to prove a violation of rule 32:1.16(d) in the Zimmerman and Mangeno matters.

In the Walker matter, Netti withdrew from the hospital-lien litigation without taking any steps to protect Walker's interest. However, as we have previously found, Walker was not Netti's client at the time of the hospital-lien action because Netti filed an answer without Walker's authorization. Thus, Netti did not violate section 32:1.16(d) in the Walker matter.

**I. Rule 32:3.3(a)(1).** Rule 32:3.3(a)(1) prohibits an attorney from knowingly making "a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Iowa R. Prof'l Conduct 32:3.3(a)(1). In the Zimmerman matter, the admission is that Netti misrepresented the assets of the estate. The rule requires this misrepresentation to be made knowingly rather than negligently. The mere fact of a misrepresentation does not allow us to infer the misrepresentation was made knowingly. *See id.* r. 32:1.0(f) (defining "knowingly"). The admission upon which the board relies fails to prove Netti knowingly misrepresented the assets of the estate. Thus, the board has failed to prove a violation of rule 32:3.3(a)(1) in the Zimmerman matter.

In the Walker matter, the admission the board relies on is that Netti filed an answer for Walker in the hospital-lien action on behalf of Walker, when he had no authority to do so. Additionally, in the Walker matter, the admission relied on by the board is that Netti filed a motion for a protective order containing false information. The false information

was that, in seeking his deposition, the insurance carrier was harassing Netti and going on a fishing expedition.

An attorney knows whether he has authority to file a pleading on behalf of a client. Therefore, from this record we can infer Netti knowingly misrepresented to the court he had authority to represent Walker when he filed an answer on Walker's behalf. *Id.* ("A person's knowledge may be inferred from circumstances."). We cannot infer, however, Netti knowingly misrepresented to the court that, in seeking his deposition, the insurance carrier was harassing him and going on a fishing expedition at the time he filed the motion for protective order. Consequently, we find the board has proven one instance where Netti violated rule 32:3.3(a)(1) in the Walker matter.

**J. Rule 32:5.5.** Rule 32:5.5(a) states, "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." *Id.* r. 32:5.5(a). In the order suspending Netti's license to practice law, we ordered Netti suspended as a member of the bar and this court. The issue we must decide is whether his representation of Mangeno before the Iowa Department of Revenue constituted the practice of law. Our ethical rules do not define the practice of law. The rules leave the determination of whether a person is practicing law to our court. *Id.* r. 32:5.5(a) cmt. 2.

Nonlawyers may do tax work because tax work is not necessarily the practice of law. *Comm. on Prof'l Ethics & Conduct v. Mahoney*, 402 N.W.2d 434, 436 (Iowa 1987). However, over thirty-five years ago we described actions this court would consider the practice of law if performed by a suspended attorney. *Comm. on Prof'l Ethics & Conduct v. Toomey*, 236 N.W.2d 39, 40 (Iowa 1975). The list of activities include but are not limited to "the examination of abstracts, consummation of real

estate transactions, preparation of deeds, buy and sell agreements, contracts, wills and tax returns as well as any court appearance or counseling clients with regard to the same." *Id.* Counseling Mangeno as to her sales tax matter is an activity that we consider as the practice of law. Thus, Netti has violated rule 32:5.5(a) by counseling Mangeno regarding her sales tax problems.

**K. Rule 32:8.1(b).** Rule 32:8.1(b) prohibits an attorney from knowingly failing "to respond to a lawful demand for information from . . . disciplinary authority." Iowa R. Prof'l Conduct 32:8.1(b). The admissions in the record confirm that, in the Matz and Mangeno matters, the board made requests of information from Netti in order to investigate the complaints filed by his clients. The record further supports he received these requests. In the Matz matter, Netti failed to provide trust account records. When a person fails to respond to a request received from the board, we can infer from the circumstances that the person knowingly failed to respond. *Id.* r. 32:1.0(f). In the Mangeno matter, he told the board it did not have jurisdiction over him and he was not going to respond. Thus, he knowingly failed to respond in the Mangeno matter. In both matters, we find the board has met its burden and proved Netti violated rule 32:8.1(b).

**L. Rule 32:8.4(c).** Rule 32:8.4(c) states an attorney commits professional misconduct by engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation." *Id.* r. 32:8.4(c). Rule 32:8.4 is a general rule prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation. The Iowa Rules of Professional Conduct contain other, more specific, provisions dealing with the same concept. *See, e.g., id.* r. 32:3.3 (discussing candor towards the tribunal); r. 32:3.4 (discussing fairness to opposing party and counsel); r. 32:3.5 (discussing

impartiality and decorum of the tribunal); r. 32:4.1 (discussing truthfulness in statements to others); r. 32:7.1 (discussing communications concerning a lawyer's services); r. 32:8.1 (discussing bar admissions and disciplinary matters). We have already found Netti violated rule 32:3.3(a)(1) by making false statements of material fact to a tribunal. When we find conduct violates a specific provision involving dishonesty, fraud, deceit, or misrepresentation, we will not find the same conduct violates rule 32:8.4(c).

That being said, we still need to deal with the board's allegation that Netti violated rule 32:8.4(c) in the Mangeno matter when he told his client he would return her retainer to her after he failed to do any work on the file. Most courts require a reasonable level of scienter to find that an attorney violated rule 32:8.4(c). 2 Geoffrey C. Hazard, Jr., et al., *The Law of Lawyering* § 65.5, at 65-15 (3d ed. 2009 Supp.). In the legal sense, a misrepresentation usually requires something more than negligence. *Black's Law Dictionary* 1091 (9th ed. 2009). We believe the better view is to require some level of scienter that is greater than negligence to find a violation of rule 32:8.4(c).

We have already found Netti's failure to return the retainer as a violation of rule 32:1.15(d). From the record presented, we are unable to determine if Netti made a knowing misrepresentation of a material fact when he made the representation to Mangeno. Accordingly, we cannot find the board proved Netti violated rule 32:8.4(c).

**M. Rule 32:8:4(d).** This rule makes it professional misconduct to "engage in conduct that is prejudicial to the administration of justice." *Id.* r. 32:8.4(d). In order for conduct to be prejudicial to the administration of justice, the conduct must hamper " 'the efficient and proper operation of the courts or of ancillary systems upon which the

courts rely' " by violating the well-understood norms and conventions of the practice of law. *Templeton*, 784 N.W.2d at 768 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005)).

Netti's failure to timely probate the Zimmerman estate, his filing of the motion for protective order containing false statements, and his failure to do any work in the Mangeno matter hampered the efficient operation of the courts and an administrative agency, and was not the type of conduct within the well-understood norms and conventions of the practice of law. Accordingly, Netti's conduct in these regards violated rule 32:8.4(d).

## IV. Sanction.

In determining the sanction a lawyer must face for misconduct, we have stated:

> The goal of the Code of Professional Responsibility is "to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering." When deciding on an appropriate sanction for an attorney's misconduct, we consider "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public." We also consider aggravating and mitigating circumstances present in the disciplinary action.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 820 (Iowa 2004) (alteration in original) (quoting *Comm. on Prof'l Ethics & Conduct v. Gill*, 479 N.W.2d 303, 306 (Iowa 1991) (first quote); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 338 (Iowa 2000) [hereinafter *D'Angelo I*] (second quote)).

A mitigating factor is that Netti has some short-term memory loss stemming from treatment for a brain tumor. While personal illness will

not excuse an attorney's misconduct, such illnesses may influence our approach to discipline. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Frerichs*, 718 N.W.2d 763, 768 (Iowa 2006) [hereinafter *Frerichs II*].

There are a number of aggravating factors in this case. First, we cannot overlook the serious, egregious, and persistent nature of Netti's misconduct and the effect it had on his victims. *See, e.g., Tompkins*, 415 N.W.2d at 623 (stating, "the more egregious and persistent the conduct, the more debased the character of the offender"). This was not one isolated incident. Netti displayed a pattern of taking fees without doing the work he was hired to do. His clients were forced to seek alternative counsel to complete the work Netti failed to do.

Second, Netti's trust account violations are a serious matter. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 287–88 (Iowa 2009). In the past, sanctions for failure to properly deposit, account for, and appropriately return unearned advance fees has ranged from a public reprimand, to a suspension, to a revocation. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 444 (Iowa 2007) [hereinafter *Earley I*]; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 236–37 (Iowa 2006) [hereinafter *D'Angelo II*]; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 560 N.W.2d 592, 594–95 (Iowa 1997). In cases warranting a more severe sanction, additional infractions or other aggravating circumstances were present. *See Earley I*, 729 N.W.2d at 443–44 (relying on the aggravating factors of neglect resulting in harm to clients, failure to return client's property, trust account violations, and prior reprimand when imposing a four-month suspension); *D'Angelo II*, 710 N.W.2d at 236–37 (recognizing multiple and serious violations, including deliberate conversion of client funds, demands revocation of lawyer's license); *Iowa Supreme Ct. Bd. of*

*Prof'l Ethics & Conduct v. Frerichs*, 671 N.W.2d 470, 477–78 (Iowa 2003) [hereinafter *Frerichs I*] (relying on aggravating factors of illegal fee contract, trust account violations, neglect of client matter, failure to cooperate with board, and prior admonition, when imposing four-month suspension).

Third, Netti's knowing misrepresentations to the court is not only a breach of professional ethics in itself but also serves to exacerbate his other conduct. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rauch*, 650 N.W.2d 574, 578 (Iowa 2002) (finding a lawyer's violation of a disciplinary rule "is seriously aggravated by his misrepresentation to the court").

Fourth, it is significant that Netti's actions caused harm to others, in terms of cost to the clients in the Zimmerman matter and delay to the clients in the Zimmerman and Mangeno matters. *See Honken*, 688 N.W.2d at 821.

The final aggravating factor is Netti's prior discipline. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 808 (Iowa 2010). Netti was privately reprimanded in Kentucky for conduct he did not divulge to the commission. Additionally, Netti's license is presently under suspension for his failure to pay annual fees and/or file the reports as required by our rules.

In similar cases, we have suspended an attorney's license for as short as six months to as long as three years. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 154–55 (Iowa 2010) (imposing six-month suspension for multiple ethical infractions involving neglect and trust account violations); *Wagner*, 768 N.W.2d at 288–89 (imposing six-month suspension for neglect, trust account violations, premature taking of probate fees, and failure to respond to board

inquiries); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 635 (Iowa 2009) (imposing eighteen-month suspension for trust account violations in four separate matters); *Moonen*, 706 N.W.2d at 402 (imposing eighteen-month suspension for neglect of probate matters and deliberately misleading or negligently failing to disclose information to the court); *D'Angelo I*, 619 N.W.2d at 338–39 (imposing three-year suspension for trust account violations, premature taking of probate fees, and neglect).

In light of the multiple violations, his incompetent representation, his conflict of interest, his failure to properly communicate with his clients, his total failure to maintain a trust account, his taking of fees without accounting for his time, his misrepresentations to the court, his failure to cooperate with the board, his unauthorized practice of law, the harm he caused his clients, the period of time over which these violations occurred, the mitigating factors, and the aggravating factors, we conclude a suspension of two years is warranted in this case.

## V. Disposition.

We have carefully considered the respondent's current violations, his prior history of ethical infractions, and his current fitness to practice law and conclude the respondent's license to practice law should be suspended indefinitely with no possibility of reinstatement for two years from the date of this decision. Prior to any application for reinstatement, the respondent must provide this court with verification of his fitness to practice law. In addition, as a condition of reinstatement, the respondent must satisfy the judgment in the Zimmerman matter and return the fee in the Mangeno matter. *See Hauser*, 782 N.W.2d at 154–55. Finally, he must do all acts necessary to reinstate his license for his

failure to pay annual fees and/or file the reports as required by our rules.

This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12. Upon any application for reinstatement, the respondent must establish that he has not practiced law during the suspension period and that he has in all ways complied with the requirements of Iowa Court Rule 35.13 and has provided the required notification of clients as outlined in Iowa Court Rule 35.22. Prior to any application for reinstatement, the respondent must provide the board with an evaluation by a licensed health care professional verifying his fitness to practice law. In addition, he must also submit documentation to the board that he has refunded the fee to Mangeno and satisfied the judgment in the Zimmerman matter. Costs are taxed to the respondent pursuant to Iowa Court Rule 35.26.

**LICENSE SUSPENDED.**

All justices concur except Waterman, Mansfield, Zager, JJ., who take no part.