# IN THE SUPREME COURT OF IOWA

No. 13–1230

Filed December 20, 2013

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**KENNETH F. DOLEZAL,**

Respondent.

_____

On review from the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends revocation of attorney's law license for ethical violations. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Kenneth F. Dolezal, Cedar Rapids, pro se.

**MANSFIELD, Justice**.

An Iowa attorney neglected a client's matter, failed to deposit client funds into his trust account, charged a client an unreasonable fee, loaned money to a client without disclosing the terms of the transaction in writing, and failed to turn over client files when ordered to do so. Additionally, the attorney continued to handle two legal matters while suspended, didn't notify one of the clients of his suspension, and made untrue statements about his suspension to the Social Security Administration.

This attorney discipline proceeding comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.11(1). The Iowa Supreme Court Attorney Disciplinary Board alleged the respondent, Kenneth Dolezal, violated a number of rules of professional conduct, with the violations extending to four distinct client matters.

Agreeing with many of the Board's allegations, the commission found that Dolezal violated Iowa Rules of Professional Conduct 32:1.5(a) (prohibiting a lawyer from charging unreasonable fees), 32:1.8(a) (prohibiting a lawyer from entering a business transaction with a client before disclosing the terms in writing), 32:1.8(e) (prohibiting financial assistance to a client in connection with pending or future litigation), 32:1.15 (requiring client funds to be held in a trust account), 32:1.16(d) (requiring a lawyer to turn over client papers and property upon termination of representation), 32:3.3(a)(1) (prohibiting a lawyer from making a false statement to a tribunal), 32:3.4(c) (prohibiting knowing disobedience of an obligation under the rules of a tribunal), 32:5.5(a) (prohibiting the unauthorized practice of law), and 32:8.4(d) (prohibiting conduct prejudicial to the administration of justice), and Iowa Court

Rules 35.23(1)(a) (requiring a suspended attorney to notify clients of a suspension within fifteen days), and 45.1 (requiring a lawyer to deposit client funds into a trust account). The commission recommended Dolezal's license be revoked. Upon our consideration of the commission's findings of fact, conclusions of law, and recommendations, we concur in most of its findings and conclusions and order the attorney's license suspended with no possibility of reinstatement for two years.

## I. Factual and Procedural Background.

Kenneth Dolezal was admitted to the Iowa bar in 1983. He is sixty-seven years old. He received the Bronze Star in 1970 for heroism in ground combat while serving in the Army in Vietnam.

On April 29, 2011, we suspended Dolezal's license for thirty days because of several violations of our ethical rules, primarily relating to neglect of client matters. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 922–23 (Iowa 2011). Reinstatement, however, was conditional on Dolezal's paying the costs of the proceeding. *Id.* at 923. Dolezal never paid those costs, and thus his license remains suspended to this day. This proceeding concerns, for the most part, events that occurred after Dolezal's April 2011 suspension.

On December 26, 2012, the Board filed a complaint against Dolezal alleging he violated Iowa Rules of Professional Conduct 32:1.3, 32:1.5(a), 32:1.8(a), 32:1.8(e), 32:1.16(d), 32:3.2, 32:3.3(a)(1), 32:3.4(c), 32:5.5(a), 32:8.1(b), 32:8.4(c), and 32:8.4(d), as well as Iowa Court Rule 35.13(3) in his handling of four separate client matters. The Board amended its complaint on March 25, 2013, and further alleged Dolezal violated Iowa Rule of Professional Conduct 32:1.15(1) and Iowa Court Rule 45.1.

**A. Steven Carter Estate.** Dolezal's neglect in handling the Carter estate was discussed in our previous disciplinary opinion. *Dolezal*, 796

N.W.2d at 919–20. Our suspension of Dolezal's license was due in part to his failure to close the Steven Carter estate in a timely fashion despite several delinquency notices. *Id.* at 920.

After we suspended Dolezal from the practice of law in April 2011, the probate court granted him permission to withdraw as counsel for the administrator. Gene Carter—Steven Carter's son and the estate administrator—was ordered to obtain alternative counsel or file the documents necessary to administer the estate within sixty days. When Carter failed to do so, he was ordered to show cause why he should not be held in contempt. Attorney Thomas Viner was appointed at public expense to defend Carter's interests in that proceeding.

On April 18, 2012, Carter attempted to file a final report, apparently without the assistance of counsel. The court rejected the report as inadequate. It set a further show-cause hearing for June 8, 2012. On that day, Carter and Viner jointly appeared. Viner explained that the finalizing of administration had been complicated by Dolezal's failure to turn over the estate file. The court therefore issued an order, which it caused to be served on Dolezal, directing him to turn over his file within thirty days.

Dolezal did not hand over his file. Instead, several additional contempt hearings had to occur before Dolezal finally made the relevant documents available in February 2013. Dolezal later admitted at the hearing before the commission that he did not provide the documents within the thirty days ordered by the court.

Additionally, on September 14, 2012, Dolezal submitted a claim for payment from the estate. His claim was supported by a billing statement which indicated the estate owed him $22,536.10. The statement showed 5.8 hours of work performed after he was suspended. The

postsuspension billed activities included, among others: (1) $60.00 for "Suspension letter to Gene [Carter]," (2) $60.00 for "Supreme Court required Notification to Court," (3) $30.00 for receiving the "clerk Notices regarding delinquent Final report and Interlocutory report," (4) $210.00 for working on the "Iowa Supreme Court Attorney Disciplinary Board—Gene Carter complaint," and (5) $120.00 for a letter to the "Attorney Disciplinary Board regarding complaint of Gene Carter."

On the same day Dolezal submitted his claim for fees, he also filed a request to have Carter removed as the estate administrator. Dolezal maintained, and still maintains, that Carter absconded with money, a car, and a motorcycle that belonged to the estate. He urged the court to replace Carter with another administrator.

Included in Dolezal's request that Carter be removed was an explanation for a payment Dolezal had received from Carter several years back. According to Dolezal, Carter had repaid him for a personal loan he had made to Carter "for the purposes of establishing his own residence rather than living with relatives which he had been doing at the time of and subsequent to his father's death." Dolezal later testified at the commission hearing that he received $2000 from Carter on December 14, 2006, in repayment of a no-interest loan. Dolezal admitted he had kept no records concerning the loan. At the commission hearing, Dolezal maintained the loan did not violate any ethical rule because he had not charged any interest.

At the time of Dolezal's disciplinary hearing, the contempt charge against Carter was still pending, and the estate had not been closed.

Based upon Dolezal's dealings with the Carter estate, the Board alleged violations of rules 32:1.5(a), 32:1.8(a), 32:1.8(e), 32:1.16(d), 32:3.4(c), 32:5.5(a), and 32:8.4(d).

**B. Marie Sadecky Estate.** Dolezal became the attorney for the estate of Marie Sadecky in 2004. At the time of Dolezal's April 2011 suspension, the estate had not been properly closed. Dolezal admitted the matter had been mistakenly marked as closed in his office before all necessary tasks were completed. It later surfaced that there had been no notice published regarding the estate, and no notice had been sent to interested parties. Also, there was no court officer's oath in the file, and letters of appointment had not been issued for the administrator.

On May 9, 2011, the State of Iowa filed a petition to reopen the Sadecky estate. The state's petition noted the administrator's claim to have turned over $13,000 in estate funds to Dolezal. The state questioned the disposition of the funds and noted that nothing had been paid toward the state's medical assistance debt.

On July 1, despite being under suspension, Dolezal presented the probate court with a final report and a proposed order approving the report and closing Marie Sadecky's estate. Both documents were signed by Dolezal. The final report indicated that most of the estate assets had gone toward Sadecky's funeral expenses, and there remained only $4518.68, which Dolezal proposed to be disbursed to the Iowa Estate Recovery Program.

The probate court took no action on Dolezal's filings, pointing out that he was "not authorized to practice law in the State of Iowa due to suspension of his license." Instead, the court appointed Rick Sole as successor attorney in the Sadecky estate. Dolezal was ordered to turn over the estate file to Sole within ten days. Dolezal did not meet this deadline but did deliver the file when Sole provided him with another copy of the court order.

At the time Dolezal turned over the file, he also provided Sole with a cashier's check for the funds remaining in the estate. Dolezal admitted he had kept the estate's cash funds in a vault in his office "[a]t the request of the [e]xecutor" and had not deposited them into his trust account.

After the Board began investigating the Sadecky matter, it requested on July 27, 2011, that Dolezal provide "copies of all documentation, including but not limited to trust account ledgers and other records, showing [his] handling of the estate's funds." The Board further requested that Dolezal explain why the funds were not in his trust account. Dolezal admitted he received the letter, but he failed to respond to it or to a subsequent April 5, 2013 order from the commission directing him to produce documents related to the handling of the Sadecky estate. As a result, on April 30, 2013, the commission held the following facts were established as to the Sadecky matter: (1) Dolezal failed to maintain any time records of his activities or time spent, (2) Dolezal did not maintain a client ledger, (3) Dolezal did not maintain a trust account ledger, and (4) Dolezal did not give notice of his suspension.

The Board alleged Dolezal violated Iowa Rules of Professional Conduct 32:1.3, 32:3.2, 32:3.4(c), 32:5.5(a), 32:8.1(b), and 32:8.4(d) and Iowa Court Rule 35.13(3) in his handling of the Sadecky estate.

**C. John Dean Matter.** On March 15, 2010, Dolezal began working with John Dean on a social security disability claim. A week later, on March 22, Dolezal filed a signed appointment of representative form with the Social Security Administration (SSA) in which he agreed to act as Dean's representative. The form contained the following statement, "I have been disbarred or suspended from a court or bar to

which I was previously admitted to practice as an attorney." Below the statement were boxes to check "yes" or "no." Dolezal checked the "no" box. At the time, Dolezal's license was under suspension, and he had been suspended on one previous occasion.[1] The following statement appeared above Dolezal's signature on the form: "I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge."

On the same form, Dolezal checked a box that stated, "I am an attorney." (There are separate boxes that nonattorneys may check; SSA permits nonattorney representatives.) Dolezal never submitted a revised appointment of representative form and continued to represent Dean on his disability claim at a December 2011 hearing and thereafter. In correspondence concerning the Dean matter, directly below his letterhead designating himself as an "Attorney at Law," Dolezal inserted the phrase "Currently under suspension."

The Board alleged that Dolezal's statements on the SSA form constituted violations of rules 32:3.3(a)(1) and 32:8.4(c), and his ongoing work for Dean violated rule 32:5.5(a).

**D. Jill Hazen Matter.** On July 16, 2010, Dolezal filed an appointment of representative form with SSA to represent Jill Hagen on a disability claim. Dolezal again marked "no" next to the statement, "I have been disbarred or suspended from a court or bar to which I was

---

[1]Dolezal's license had been temporarily suspended in 1991 for noncompliance with both client security requirements and continuing legal education requirements. His license was temporarily suspended again on March 4, 2010, for failing to respond to inquiry notices from the Board. This suspension was lifted March 30, 2010.

previously admitted to practice as an attorney." At that time, Dolezal was not under suspension, although he had been suspended in the past.

In the Hazen matter, the Board contended Dolezal made a false representation in violation of rules 32:3.3(a)(1) and 32:8.4(c).

## II. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Henrichsen*, 825 N.W.2d 525, 526 (Iowa 2013). We respectfully consider the commission's findings and recommendations, but are not bound by them. *Id.* "It is the [B]oard's burden to prove attorney misconduct by a convincing preponderance of the evidence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bowles*, 794 N.W.2d 1, 3 (Iowa 2011). "While this burden is higher than the burden in civil cases, it is lower than in a criminal prosecution." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 760 (Iowa 2010). If misconduct is proven by the Board, the sanction we impose may be lesser or greater than the sanction the commission recommended. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 9 (Iowa 2012); *see also* Iowa Ct. R. 35.11(1).

## III. Review of Alleged Ethical Violations.

We turn to the alleged rule violations.

**A. Failure to Act with Reasonable Diligence (Rule 32:1.3).** Rule 32:1.3 states an attorney "shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. Unless the attorney properly terminates the representation of a client, he or she "should carry through to conclusion all matters undertaken for a client." *Id.* cmt. 4.

Persistent delays in handling a client matter are inconsistent with an attorney's obligations under rule 32:1.3. *See Iowa Supreme Ct. Att'y*

*Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 664–65 (Iowa 2012) (noting an attorney violated 32:1.3 when his only action on a client matter for a twenty-month period was sending two letters to the claims adjuster). We have found that an attorney's ongoing failure to perform the work necessary to close an estate constituted a violation of rule 32:1.3. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012) (finding a violation when an attorney allowed an estate to remain open for nearly five years, well in excess of the three-year statutory limitation).

Dolezal entered an appearance in the Sadecky matter in 2004. Seven years later, several required initial steps had not been undertaken, the estate funds had not been distributed, and the estate had not been properly closed. After Dolezal was suspended in 2011, he tried to patch things up by submitting a long-overdue final report. When the successor attorney took over the case, he was able to complete the necessary steps and close the estate in less than three months. Dolezal's failure to properly open the estate, let alone properly close it, over a prolonged period of time violated rule 32:1.3.[2]

**B. Unreasonable Fees (Rule 32:1.5(a)).** Rule 32:1.5(a) states an attorney "shall not . . . charge . . . an unreasonable fee." Iowa R. Prof'l Conduct 32:1.5(a). While specific factors are listed in the rule to assist in a determination of whether a fee is unreasonable, the factors "are not exclusive," and fees charged must be "reasonable under the circumstances." *Id.* cmt. 1.

---

[2]The Board also alleged that Dolezal's dilatory handling of the Sadecky estate violated rule 32:3.2 (requiring a lawyer to "make reasonable efforts to expedite litigation consistent with the interests of the client"). We do not agree. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 831 N.W.2d 194, 199 (Iowa 2013) (indicating that probate delinquencies do not qualify as litigation).

After his suspension in April 2011, Dolezal continued to bill the Carter estate for work performed on the case at the rate of $150.00 per hour. Included in the 5.8 hours billed was time taken to notify the client and the court of his suspension and time to respond to the Board's inquiry following a complaint submitted by the client.

We have previously noted that "an attorney who collects a fee for legal work performed while under suspension has collected an *unearned* fee in violation of rules 32:1.15 and 45.7 . . . but not necessarily an *unreasonable* fee." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCuskey*, 814 N.W.2d 250, 256 n.6 (Iowa 2012). However, in that case, we noted the Board did not "contend that McCuskey's fee would have been unreasonable for the work he actually did if he had not been under suspension." *Id.*

By contrast, in this case, regardless of whether the attorney had been suspended, it would not have been reasonable for him to bill his client for time spent defending an ethics complaint or notifying others of the status of his law license. *See In re Lawyers Responsibility Bd. Panel No. 94-17*, 546 N.W.2d 744, 746–47 (Minn. 1996) (noting an attorney's act of billing his client for time he spent responding to the client's ethics complaint was a violation of the rule of professional conduct that prohibits unreasonable fees); *In re Conduct of Paulson*, 71 P.3d 60, 62 (Or. 2003) ("An accused lawyer who charges a client for work that the lawyer performed—but not for the benefit of that client—has charged a fee in excess of a reasonable fee, even if the excessive charges appear within a bill that contains other reasonable charges.").

Dolezal was required by rule 35.23(1) to notify his client and the court of his suspension. *See* Iowa Ct. R. 35.23(1)(a), (e). Additionally, rule 34.6(4) required Dolezal to respond to the Board upon receiving a

complaint from it. *Id.* r. 34.6(4). Thus, providing notice of his suspension and responding to the Board's inquiries were not actions undertaken by Dolezal to further representation of his client, but rather to protect his own interests. By seeking payment for these tasks, Dolezal charged an unreasonable fee in violation of rule 32:1.5(a).

**C. Conflicts of Interest (Rules 32:1.8(a) and 32:1.8(e)).** Rule 32:1.8(a) indicates an attorney

> shall not enter into a business transaction with a client . . . unless:
>
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client.

Iowa R. Prof'l Conduct 32:1.8(a)(1).

Dolezal admitted he had given Carter a loan so that Carter might obtain his own apartment. Dolezal acknowledged he had no written records of the transaction. Dolezal pointed out that Carter—a fellow Vietnam veteran—had requested the loan, and no interest was charged. Dolezal therefore insisted the loan was not a business transaction.

We disagree. While Dolezal's arrangement was apparently "fair and reasonable to the client," that is not all rule 32:1.8(a) requires. A loan to a client where repayment is expected—even when no interest is charged—is a business transaction and should comply with the entirety of rule 32:1.8(a). *See* Iowa R. Prof'l Conduct 32:1.8 cmt. 1 ("A lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property, or financial transaction with a client, for example, a loan . . . ."); *see also In re Discipline of Hartke*, 529 N.W.2d 678, 681 (Minn. 1995) (noting a loan

from a client to a lawyer is a "business transaction requiring the attorney to meet the disclosure requirements"); *In re Disciplinary Proceedings Against Trewin*, 684 N.W.2d 121, 131 (Wis. 2004) (noting that in order for a loan from a lawyer to a client to be properly disclosed, a "client must give separate consent to the transaction with the lawyer, waiving the conflict of interest, and the client must indicate in writing he or she has been given a reasonable opportunity to consult with independent counsel").

Although comment 1 to the rule exempts "standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others," this was not such a transaction. *See* Iowa R. Prof'l Conduct 32:1.8 cmt. 1. Hence, Dolezal violated rule 32:1.8(a) by failing to make the required written disclosures and obtain the required written consent. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wintroub*, 745 N.W.2d 469, 474 (Iowa 2008) ("[F]ull disclosure means the use of active diligence on the part of the attorney to fully disclose every relevant fact and circumstance which the client should know to make an intelligent decision concerning the wisdom of entering the agreement." (Citation and internal quotation marks omitted.)). No one disputes that Dolezal was being altruistic, but one problem with this kind of arrangement is that it can create conflicting interests for the attorney when he becomes both a creditor and a representative of a client, especially when the client is a fiduciary.

Rule 32:1.8(e) prohibits an attorney from providing "financial assistance to a client in connection with pending or contemplated litigation." Iowa R. Prof'l Conduct 32:1.8(e). Comment 10 to the rule states:

> Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation.

*Id.* cmt. 10.

We find no violation of this rule. The evidence does not indicate the loan was made "in connection with" pending litigation or any future litigation. Rather, Dolezal's testimony is that the loan was for Carter's personal use to obtain a new apartment.

**D. Trust Account Violations (Rules 32:1.15(a) and 45.1).** Under rule 32:1.15(a), an attorney must keep a client's funds "in a separate account." *Id.* r. 32:1.15(a). Additionally, rule 45.1 requires funds received by an attorney "arising out of the practice of law" to "be deposited in one or more identifiable interest-bearing trust accounts." Iowa Ct. R. 45.1.

Dolezal admitted he kept the cash from the Sadecky estate in a vault in his office. He argued he did so because that is what his client wanted.

Despite the client's alleged request that the estate funds not be deposited, we find Dolezal's failure to deposit the cash into his trust account constitutes a violation of rule 32:1.15(a) and rule 45.1. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins*, 648 N.W.2d 127, 134 (Iowa 2002) ("Even if a client tells her attorney to withhold funds from a trust account, the attorney's failure to deposit the funds into a trust account would result in an ethics violation.").

**E. Failure to Turn Over Client Files When Ordered to Do So (Rules 32:1.16(d), 32:3.4(c), and 32:8.4(d)).** When an attorney's representation of a client ends, rule 32:1.16(d) requires the attorney to

"take steps to the extent reasonably practicable to protect a client's interests . . . such as . . . surrendering papers and property to which the client is entitled." Iowa R. Prof'l Conduct 32:1.16(d). We have found that an attorney's failure to deliver a client's file after a request by the client and the client's new attorney constituted a failure to take reasonable steps to return a client's papers and property. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 442 (Iowa 2007).

Dolezal failed in both the Carter and Sadecky matters to turn over files to new counsel despite orders from the court to do so. Dolezal urges he was entitled to retain the Carter file because of an attorney's lien for unpaid fees. *See* Iowa R. Prof'l Conduct 32:1.16(d) ("The lawyer may retain papers relating to the client to the extent permitted by law."); Iowa Code § 602.10116(1) (2011) ("An attorney has a lien for a general balance of compensation upon . . . [a]ny papers belonging to a client which have come into the attorney's hands in the course of professional employment.").

But even assuming Dolezal had a valid attorney's lien in the Carter matter, which we do not decide, Dolezal repeatedly disobeyed court orders relating to that file. This led to contempt proceedings against both Carter and Dolezal himself. Knowingly disobeying a court order is an ethical violation of its own, "except for an open refusal based on an assertion that no valid obligation exists." *See* Iowa R. Prof'l Conduct 32:3.4(c). The record before us supports a finding by a convincing preponderance of the evidence that Dolezal knowingly disobeyed the court's orders. He offered no explanation in court other than foot-dragging, and his actions unfairly disadvantaged Viner, who was trying to extract Carter from the contempt proceedings. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 533 (Iowa 2011)

(finding no violation of rule 32:3.4(c) when opposing counsel was not unfairly disadvantaged).

Thus, we find Dolezal violated rule 32:1.16(d) in connection with the Sadecky matter and rule 32:3.4(c) in connection with the Carter matter.

We also agree with the commission that Dolezal's conduct in the Carter estate violated rule 32:8.4(d). It is "professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). "An attorney's conduct is prejudicial to the administration of justice when it violates the well-understood norms and conventions of the practice of law such that it hampers the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart,* 827 N.W.2d 169, 180 (Iowa 2013) (citation and internal quotation marks omitted). Our prior cases have repeatedly held that an attorney violates rule 32:8.4(d) "when his misconduct results in additional court proceedings or causes court proceedings to be delayed or dismissed." *Id.*; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham,* 812 N.W.2d 541, 550 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson,* 792 N.W.2d 674, 681 (Iowa 2010).

Dolezal's refusal to turn over the Carter file necessitated multiple hearings between 2011 and 2013. As Viner later put it, "[W]e've been before five or six different judges in this case, because I've been to five or six different hearings." This conduct violated rule 32:8.4(d).

**F. Dishonesty (Rules 32:3.3(a)(1) and 32:8.4(c)).** Rule 32:3.3 is entitled "Candor toward the tribunal" and states an attorney "shall not knowingly . . . make a false statement of fact . . . to a tribunal." Iowa R. Prof'l Conduct 32:3.3(a)(1). "Knowingly is defined as actual knowledge of

the fact in question and may be inferred from circumstances." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hearity*, 812 N.W.2d 614, 620 (Iowa 2012) (quoting Iowa R. Prof'l Conduct 32:1.0(f)) (internal quotation marks omitted). The definition of "tribunal" includes an "administrative agency, or other body acting in an adjudicative capacity." Iowa R. Prof'l Conduct 32:1.0(m).

It is undisputed that Dolezal was under suspension—and knew he was under suspension—at the time he signed the appointment of representative form in the Dean matter. Therefore, his denial of having been disbarred or suspended from a court or bar to which he was previously admitted to practice as an attorney was false. *See* Iowa R. Prof'l Conduct 32:3.3(a)(1). By checking "no," Dean knowingly made a false statement of fact to the SSA—an administrative agency that was acting in an adjudicative capacity. *See id.* rs. 32:1.0(m), 32:3.3(a)(1).

Dolezal contends that under SSA regulations, he only had to disclose "suspensions for misconduct, not . . . temporary suspensions . . . for . . . nonpayment of fees, noncompliance with CLEs, all those sorts of administrative matters." However, the form does not say that. And we do not agree with Dolezal's reading of SSA regulations.

Although Dolezal has not cited the actual SSA regulations, it appears that an attorney may be disqualified from representing claimants before SSA if he or she "[h]as been, by reason of misconduct, disbarred or suspended from any bar or court to which he or she was previously admitted to practice." 20 C.F.R. § 404.1745(c) (Westlaw current through Dec. 2013). Further:

> In deciding whether a person has been, by reason of misconduct, disbarred or suspended by a court or bar, or disqualified from participating in or appearing before any Federal program or Federal agency, the hearing officer will

> consider the reasons for the disbarment, suspension, or disqualification action. If the action was taken for solely administrative reasons (e.g., failure to pay dues or to complete continuing legal education requirements), that will not disqualify the person from acting as a representative before us.

*Id.* § 404.1770(a)(2). However, the thrust of these regulations is that *the hearing officer*—after receiving information on the suspension—should decide whether it was for misconduct. It does not indicate the attorney should only report suspensions that *the attorney* considers to be misconduct-related. We are not persuaded that Dolezal, who testified that ninety percent of his law practice related to social security disability claims, misunderstood the regulations. Accordingly, we find Dolezal violated rule 32:3.3(a)(1).[3]

At the time Dolezal signed the appointment of representative form for Hazen in July 2010, he was not then under suspension. Still, he had undergone prior suspensions. Dolezal does not contend he understood the statement, "I have been disbarred or suspended from a court or bar to which I was previously admitted to practice as an attorney," to refer only to suspensions that remained in effect.[4] Thus, we find Dolezal also made a knowingly false representation when he executed and submitted the form in the Hazen matter.

Rule 32:8.4(c) indicates it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). Yet "[w]hen we find conduct violates a specific provision involving dishonesty, fraud, deceit,

---

[3]Dolezal testified at the commission hearing that he is currently disqualified from appearing before SSA even in a nonattorney capacity.

[4]We note, however, that SSA subsequently rewrote the form to say, "I am now or have previously been disbarred or suspended from a court or bar to which I was previously admitted to practice as an attorney."

or misrepresentation, we will not find the same conduct violates rule 32:8.4(c). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011). Having found a violation of rule 32:3.3, we will not find the same conduct violated rule 32:8.4(c).

**G. Practicing Without a License (Rules 32:5.5(a), 35.13(3), and 35.23(1)).** Rule 32:5.5(a) states an attorney "shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction." Iowa R. Prof'l Conduct 32:5.5(a). We recently found an attorney in violation of this rule when he appeared for a juvenile court hearing six days after receiving notice that his license was suspended. *See Hearity*, 812 N.W.2d at 620. Also, an attorney who continued to draft filings and write letters on behalf of clients after his license had been suspended was held to have violated this rule. *See McCuskey*, 814 N.W.2d at 252–53, 255. Additionally, an attorney violated rule 32:5.5's predecessor when he prepared an interlocutory report for an estate and delivered it to the executor for signature while under suspension. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 380 (Iowa 2007). Besides rule 32:5.5(a), we have rule 35.13(3), which provides, "Any attorney suspended shall refrain, during such suspension, from all facets of the ordinary law practice." Iowa Ct. R. 35.13(3).

We agree with the commission that Dolezal violated these rules. He tried to close the Sadecky estate by presenting a final report after we had suspended his license. Dolezal denies that he was "doing this as an attorney; I was, in essence, complying with the request of [the state]." We do not accept this excuse. The commission rightly characterized Dolezal's explanation for submitting the final report after he was suspended as "quibbl[ing]."

Dolezal also continued to handle the Dean social security claim through a disability hearing. Dolezal again denies he violated rule 32:5.5(a) because one does not have to be an attorney to practice before SSA.[5] However, we have previously held that if a suspended attorney continues to perform tasks within the scope of his or her former law practice, this constitutes the unauthorized practice of law even if nonlawyers are also allowed to perform that work. *See Netti*, 797 N.W.2d at 604 (holding that an attorney under suspension violated rule 32:5.5(a) by counseling a client on a sales tax matter); *see also Comm. on Prof'l Ethics & Conduct v. Mahoney*, 402 N.W.2d 434, 436–37 (Iowa 1987).

Dolezal emphasizes he did not misrepresent his status to anyone. For example, his stationery said, "Attorney at Law, Currently under suspension." But a misrepresentation is not necessary for a violation of rule 32:5.5(a).[6]

Additionally, rule 35.23(1) requires an attorney who has been suspended to notify his or her clients of the suspension within fifteen days. Iowa Ct. R. 35.23(1)(*a*). Because of Dolezal's failure to respond to a Board inquiry, the commission established as a fact that he had not notified his client of his suspension in the Sadecky matter. (Dolezal's excuse was that he thought the estate was closed.) We find Dolezal violated rule 35.23(1).

---

[5]Dolezal never updated his appointment of representative form in which he accepted appointment in the capacity of an "attorney."

[6]Although we find Dolezal violated rules 32:5.5(a) and 35.13(3) in the Sadecky and Dean matters, we do not find he violated them in connection with the Carter estate. Dolezal was a creditor of that estate. Thus, he was entitled to seek payment of his previously earned fees or the removal of the administrator so long as he did not claim to be an attorney at the time he was doing so.

### IV. Consideration of Appropriate Sanction.

We now consider the appropriate sanction. "There is no standard sanction for particular types of misconduct. While prior cases are instructive, we craft an appropriate sanction in light of each case's unique circumstances." *Hearity*, 812 N.W.2d at 622 (citation and internal quotation marks omitted).

> "In determining the appropriate discipline, we consider the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue in the practice of law, as well as any aggravating and mitigating circumstances."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 831 N.W.2d 194, 201 (Iowa 2013) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 880 (Iowa 2012)).

"We have suspended an attorney's license for substantial lengths of time when the attorney's neglect is compounded by other serious offenses such as disregarding court orders or making misrepresentations to the court." *Hearity*, 812 N.W.2d at 622–23 (one-year suspension for neglect, unreasonable fees, failure to properly terminate representation, failure to respond to the Board, practicing law without a license, making a false statement to a court, and other violations); *see Dunahoo*, 799 N.W.2d at 531–35 (suspending license for one year for neglect, trust account violations, and court misrepresentations); *Netti*, 797 N.W.2d at 607 (suspending an attorney's license for two years for "multiple violations, his incompetent representation, his conflict of interest, his failure to properly communicate with his clients, his total failure to maintain a trust account, his taking of fees without accounting for his time, his misrepresentations to the court, his failure to cooperate with the [B]oard, [and] his unauthorized practice of law"); *Johnson*, 792

N.W.2d at 681–83 (suspending license for three years when attorney violated numerous rules by conduct that included neglect of client matters, failure to return unearned fees, failure to return client file, and failure to respond to the Board's inquiry); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 821–22 (Iowa 2007) (suspending license for one year for misrepresentations to the court and neglect).

As discussed above, Dolezal's violations include neglect, charging an unreasonable fee in a client matter, failing to make proper disclosures before lending money to a client, failing to deposit an estate's cash assets in his trust fund, failing to comply with court orders regarding the turnover of case files in two probate matters, making a false representation to SSA, and failing to honor the terms of a suspension by continuing to practice law in two matters.

The present case has aggravating factors. "Prior discipline is [an] aggravating factor we consider in determining the appropriate sanction." *McCuskey*, 814 N.W.2d at 258. Recently, Dolezal received a thirty-day suspension when we noted a "recurring pattern" of neglect. *Dolezal*, 796 N.W.2d at 922. This case presents further examples of delay. Also, one subject of that earlier disciplinary case—the Carter estate—is again the subject of violations. We have previously addressed the situation of an attorney who committed misconduct again in a client matter for which he had previously been disciplined. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 869 (Iowa 2010). We stated: "We think the prior reprimand constitutes a particularly aggravating circumstance because one would expect that the initial discipline . . . would have prompted the respondent to attend to his clients' legal matters . . . ." *Id.* at 869–70. In this case, Dolezal's previous suspension was, in part, due

to the extreme delinquency of the Carter estate. Yet, despite his suspension, Dolezal refused to turn over the file to the client or the new attorney and caused further delay in the already significantly delinquent estate.

In addition to the suspension we imposed in 2009, Dolezal has had other past disciplinary problems. We previously discussed his disciplinary history:

> He was privately admonished in October 2009 for failing to respond to delinquency notices in another guardianship/conservatorship. In addition, Dolezal was privately admonished in the early 1990s for an advertising violation and for acquiring a security interest in the property of a client that was part of the subject matter of his representation. . . .
>
> Dolezal's right to practice also was suspended in 1991 for noncompliance with both continuing legal education requirements and client security requirements. . . .
>
> Dolezal was temporarily suspended from the practice of law in March 2010 for failing to respond to inquiry notices from the [B]oard relating to a complaint. . . .

*Dolezal*, 796 N.W.2d at 920–21.

"Failure to respond to and cooperate with the Board's investigation is also an aggravating factor." *Cunningham*, 812 N.W.2d at 551. Dolezal failed to respond to inquiries from the Board and an order from the commission seeking information about the Sadecky estate.

Additionally, as noted by the commission, Dolezal was generally defiant at his disciplinary hearing. "Minimizing or failing to take responsibility for one's misconduct is an aggravating factor." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowers*, 823 N.W.2d 1, 17 (Iowa 2012) (finding an attorney's defiance and comportment at the disciplinary hearing to be an aggravating factor). Dolezal walked out of the hearing at the beginning in protest (although he returned shortly

thereafter). At the hearing, Dolezal insisted that he had done nothing wrong by presenting a proposed order for the court to sign closing the Sadecky estate after he had been suspended, failing to keep estate cash in a trust account, making a loan to Carter without written disclosures, or continuing to handle Dean's social security disability claim. The Commission's observations are apt:

> This panel is concerned that Respondent either does not understand the nature of his violations, or simply does not believe the rules apply to him. Respondent is convinced he may represent clients in social security matters, that he may loan money to clients and that he may maintain his clients' funds where the clients wish. He does not appear to accept the fact that he was, and is, suspended from all facets of the practice of law. He equivocated [as to] the nature of his suspensions and thinks he may still advise clients . . . . For whatever reason, Respondent's . . . past ethical discipline has not convinced him that rules actually apply to him, and not whenever he chooses.

Moreover, although there is no indication that any of Dolezal's clients suffered financial harm, Carter did have to go through contempt proceedings. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 544 (Iowa 2013) (noting that "more severe discipline is appropriate when an attorney's unethical conduct causes harm to clients").

In fairness, this case also presents mitigating circumstances. As early as 1983, Dolezal underwent treatment for depression and posttraumatic stress syndrome stemming from his military service in Vietnam. He claimed it manifested in difficulty concentrating, "outburst[s] of anger, frustration, [and an] inability . . . to maintain [his] composure." Dolezal is currently being treated at the Veterans Affairs hospital in Iowa City and taking three prescribed medications. Dolezal indicated he did not feel he was capable of representing clients as an

attorney in his current mental state. Toward the end of the hearing, Dolezal stated that he and his spouse intend to move to Colorado in the near future because his spouse is retiring and she is originally from there.

Personal issues, such as depression, can be a mitigating factor, but they "do not excuse a lawyer's misconduct." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 703 (Iowa 2008). Since Dolezal is receiving treatment for his illness, "his efforts to get healthy must be considered in fashioning an appropriate sanction." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 800 (Iowa 2010); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 674 (Iowa 2013) (considering mental illness a mitigating factor when the attorney was being treated for it); *Cannon*, 821 N.W.2d at 881–82 (considering an attorney's treated depression and alcoholism a mitigating factor).

It is difficult to find a direct parallel to this case. The misconduct in this case does not rise to the level of theft or fraud. Dolezal did not retain funds he was not entitled to. Instead, we have a series of violations that, one by one, might not warrant a severe sanction but, collectively, confirm the commission's observation that Dolezal "either does not understand the nature of his violations, or simply does not believe the rules apply to him."

Several recent decisions, in our view, offer some guidance. In *Kennedy*, we recently ordered an indefinite suspension of at least one year when an attorney leveled false charges against a public official and neglected several client matters, resulting in financial harm to one client and the delay or dismissal of other cases. *Kennedy*, 837 N.W.2d at 667–73. Kennedy's case was further aggravated by a "significant history of

prior discipline." *Id.* at 674. However, we also considered her treatment for "mental illness that presently renders her unfit to practice law" as a mitigating factor. *Id.*

In *McCuskey,* we were confronted with an attorney who continued to practice law during his suspension, failed to inform his clients of his suspension, continued to take fees from clients during his suspension, failed to provide accountings for his trust account, and did not return unearned fees to his clients. *McCuskey,* 814 N.W.2d at 255–56, 259. McCuskey's extensive legal experience and his "complete failure to respond" to the Board's investigation were considered as aggravating factors. *Id.* at 258 (citation and internal quotation marks omitted). We discerned no mitigating factors. *Id.* While McCuskey did not have a history of prior disciplinary issues, we considered his noncompliance with his suspension order "a serious matter." *Id.* at 259. As a result, we suspended McCuskey's license indefinitely with no possibility of reinstatement for one year. *Id.*

In another case, the attorney "neglected the matters of multiple clients, made misrepresentations to his clients about the status of their cases to cover up his neglect, filed a court document containing a forged signature, failed to appear at court proceedings, and failed to comply with court orders directing him to cure deficiencies." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy,* 814 N.W.2d 596, 610 (Iowa 2012). He also had significant problems relating to the handling of client funds. *Id.* His heart disease and subsequent open-heart surgery that occurred during this time were mitigating factors. *Id.* at 611. At the same time, his "detailed history of prior disciplinary violations" served as an aggravating factor. *Id.* We suspended this attorney with no possibility of reinstatement for two years. *Id.*

We determined an indefinite suspension of at least eighteen months was the appropriate sanction for an attorney who "committed numerous ethical violations involving neglect of client matters, misrepresentation, and conduct prejudicial to the administration of justice." *Cunningham*, 812 N.W.2d at 554. In that case, the lawyer's inaction resulted in meaningful financial harm to two separate clients. *Id.* at 551. The neglect was combined with misrepresentations to the clients and officers of the court. *Id.* The attorney "failed to turn over [the clients'] files or to assist them in any way in dealing with his sudden withdrawal." *Id.* at 553. Additionally, the attorney failed to respond to the Board's complaints. *Id.* at 554. The attorney's only prior discipline was a private admonishment that we did not treat as an aggravating factor. *Id.* at 552–53. While the attorney's violations may have stemmed from mental illness, he did not present any evidence that this was a mitigating circumstance. *Id.*

In *Netti*, the attorney violated numerous rules when he had taken fees for work not completed, represented a client despite a conflict of interest, commingled client funds with personal funds, made a misrepresentation to the court, practiced law during a license suspension, and failed to respond to a Board investigation. *Netti*, 797 N.W.2d at 600–05. We found his case was aggravated by factors that included "the serious, egregious, and persistent nature" of the misconduct, misrepresentations to the court, the fact that the attorney's actions caused harm to others, and the attorney's previous disciplinary issues. *Id.* at 606–07. We deemed Netti's short-term memory loss stemming from his treatment for a brain tumor to be a mitigating factor. *Id.* at 606. Based on Netti's "current violations, his prior history of ethical infractions, and his current fitness to practice law," we concluded

the appropriate sanction was an indefinite suspension with no possibility of reinstatement for two years. *Id.* at 607.

Here we conclude that an indefinite suspension with no possibility of reinstatement for two years is appropriate. While Dolezal's violations are similar in nature to those in *McCuskey,* his significant history of disciplinary problems makes this a more serious case, especially when we consider Dolezal was failing to honor a suspension this court had just imposed on him. Dolezal's "je ne regrette rien" attitude at the commission hearing also justifies a more severe sanction than we imposed in *Kennedy.*

The commission acknowledged that "this case, on its surface, may not appear to the level of seriousness that warranted the suspensions" in cases such as *Netti.* Yet it recommended revocation of Dolezal's law license based on his "almost immediate violations after April 2011, as well as his demeanor, and testimony, at the hearing." As it stated, "The panel is not satisfied that the Respondent's potential practice will be assisted by his further mental health treatment, given his attitude about his violations."

There is something to be said for the commission's view. However, after considering our precedent, and the nature of the violations, we believe an indefinite suspension of at least two years is the appropriate sanction. We do not equate this case with *Iowa Supreme Court Board of Professional Ethics and Conduct v. Beckman,* cited by the Commission, because that case involved numerous acts of deceit, including repeated fraudulent billing and the collection of illegal fees. 674 N.W.2d 129, 137–39 (Iowa 2004). As an additional protection for the public, we will direct Dolezal to provide a statement from a licensed mental health care provider that he is fit to practice law prior to any reinstatement.

**V. Disposition.**

We suspend Dolezal's license to practice law in Iowa indefinitely with no possibility of reinstatement for two years. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.13(3). Dolezal must notify all clients as outlined in rule 35.23(1).

If Dolezal applies for reinstatement, he must establish he has not practiced law during the period of his suspension and has complied with the requirements of Iowa Court Rules 35.13 and 35.23. Prior to any reinstatement, Dolezal must provide an evaluation from a licensed mental health professional verifying his fitness to practice law. *See Kennedy*, 837 N.W.2d at 677 (imposing a similar condition and citing other cases that have done so).

Costs of this action are taxed to Dolezal pursuant to Iowa Court Rule 35.27.

**LICENSE SUSPENDED.**